# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL D. MCCAIN, SR.,<br>    Plaintiff, | Case No. 1:19-cv-234 |
| | Black, J. |
| vs | Bowman, M.J. |
| WARDEN JACKSON, et al.,<br>    Defendants. | **ORDER AND REPORT<br>AND RECOMMENDATION** |

Plaintiff, an inmate at Ross Correctional Institution,[1] in Chillicothe, Ohio, has filed a pro se civil rights complaint, which the Court construes as filed pursuant to 42 U.S.C. § 1983.[2] Plaintiff alleges that the defendants, Warren Correctional Institution (WCI) employees "Warden Jackson," "Lt. Little," "Asst. Admin. Kraft," "DWO Lunecky," "ISS Agee," "Unit Manager Crosby," "Case Manager Hoover," "Sgt. Ewen," unknown "Major,"[3] "SMP Mrs. Allen," "Mr. Tabler,"[4] and "Librarian Mr. Berchell," and Ohio Department of Rehabilitation and Correction (ODRC) unknown "classification—legal service" employee,[5] unknown "Classification Chief—legal serv[ice]," and "Director Jeffreys"[6] violated plaintiff's constitutional rights by retaliating against him for challenging and encouraging other inmates to challenge the conditions at WCI and violating his due process rights in a disciplinary proceeding. (Doc. 1-1). Plaintiff has also filed a motion for preliminary injunction (Doc. 2) and a motion to supplement his complaint with

---

[1] At the time plaintiff commenced this action, he was incarcerated at Warren Correctional Institution. It appears from the Ohio Department of Rehabilitation and Correction website that he is currently at Ross Correctional Institution. The **Clerk of Court** is hereby **DIRECTED** to send a copy of the Order granting plaintiff leave to proceed *in forma pauperis* and this Order and Report and Recommendation to plaintiff at both addresses.
[2] *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) ("Section 1983 provides a private cause of action for the deprivation, under color of state law, of 'rights . . . secured by the Constitution and laws.'") (footnote omitted).
[3] Plaintiff identifies this defendant as "Major Vance" elsewhere in his petition. (*See* Doc. 1-1, at PageID 20).
[4] Plaintiff variously spells this defendant's name as "Tabler" and "Taber" in his complaint. For ease of reference, the undersigned will use "Tabler" in this Order and Report and Recommendation.
[5] Defendant unknown "classification—legal service" employee and defendant "Librarian Mr. Berchell" are listed in the body of plaintiff's complaint. (*See* Doc. 1, at PageID 19, 20). For ease of reference, the **Clerk of Court** is **DIRECTED** to update the docket sheet in this case to include these defendants.
[6] The undersigned understands plaintiff's complaint against "Director Jeffreys" to be against the current Director of the ODRC. For the reasons below, plaintiff has failed to state a claim for relief against the Director of the ODRC.

new allegations and three new defendants, along with a supporting memorandum which the Court understands to be plaintiff's proposed supplemental complaint (Doc. 4). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis.*

"A party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). Because defendants have not yet been served in this action, no defendant has answered plaintiff's original complaint or filed a motion under Rule 12. Thus, plaintiff may amend his complaint as a matter of course and his motion to supplement his complaint (Doc. 4) is hereby **GRANTED**. *See Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *3 (6th Cir. Jan. 23, 2009) (holding that "Rule 15(a) permits a plaintiff to file an amended complaint, without seeking leave from the court, at any time before a responsive pleading is served"). The **Clerk of Court** is hereby **DIRECTED** to update the docket sheet in this matter to reflect the newly added defendants, i.e., "RIB Secretary Name Unknown," "Lt. Gerrison" and "Sgt. Gault."

This matter is now before the Court for a s*ua sponte* review of the complaint, as supplemented, to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

## I.    Screening of Complaint

### A.    Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an

economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to

state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### B. Plaintiff's Complaint

Plaintiff alleges that on January 18, 2019, defendant Little issued plaintiff a false conduct report for violating ODRC Rules 16 and 18.[7] (Doc. 1-1, at PageID 24). According to plaintiff, Little issued the conduct report in retaliation for plaintiff encouraging another inmate ("Inmate Maxy") to file a grievance and because plaintiff knew how to use the inmate grievance procedure. (Doc. 24, at PageID 24-26). Plaintiff asserts that he was placed in disciplinary segregation at WCI. (Doc. 1-1, at PageID 24).

Plaintiff alleges that defendants Sgt. Ewin, Warden Jackson, Asst. Admin. Kraft, Unit Manager Crosby, and Case Manager Hoover failed to take appropriate action when plaintiff

---

[7]Rule 16 governs "Engaging in or encouraging a group demonstration or work stoppage." Ohio Rev. Code § 5120-9-06(16). Rule 18 governs: "Encouraging or creating a disturbance." Ohio Rev. Code § 5120-9-06(18).

4

inquired as to the charges against him and as to whether video footage of the incident was preserved. (Doc. 1-1, at PageID 26-27). Plaintiff also alleges that Jackson, Kraft, Crosby, and Hoover told plaintiff he would be going to the "RIB" (Rules Infraction Board), but that he never went to the RIB. (Doc. 1-1, at PageID 27). Plaintiff alleges that defendant Major Vance claimed that he never received a kite from plaintiff, even though plaintiff allegedly sent one to him at the same time he sent kites to the other defendants who received theirs. (Doc. 1-1, at PageID 27).

Plaintiff claims that on the last day for him to be brought before the RIB he stopped Kraft while Kraft was doing his rounds and asked him about plaintiff's status. (Doc. 1-1, at PageID 27). Plaintiff alleges that Kraft initially said that plaintiff would be going to the RIB, but when plaintiff told Kraft that plaintiff's time for going to the RIB had passed, Kraft said that plaintiff was going to the "SMP" (Serious Misconduct Panel). (Doc. 1-1, at PageID 27). Plaintiff contends that the charges against him should have been dropped when he was not timely brought before the RIB. (Doc. 1-1, at PageID 28).

Plaintiff claims that his SMP hearing was held on February 12, 2019, four days after the twenty-one-day period to bring him before the SMP expired. (Doc. 1-1, at PageID 28). According to plaintiff, the defendant hearing officers, SMP Mrs. Allen and Mr. Tabler, knew that the SMP hearing was untimely, but allowed it to continue regardless. (Doc. 1-1, at PageID 28). Plaintiff alleges that the defendant hearing officers ignored plaintiff's evidence, which included testimony from Inmate Maxy, and found him "guilty of protesting and involved in a serious riot" (Doc. 1-1, at PageID 31) and raised his security classification level to 4B level (Doc. 1-1, at PageID 32).

Plaintiff claims that he appealed the SMP decision, but that as of the time of his initial

complaint he had not received a response from defendant unknown classification employee or defendant unknown Classification Chief, and that the time for a response had expired. (Doc. 1-1, at PageID 32).

On March 4, 2019, plaintiff claims that defendant Hoover did plaintiff's annual review without following proper procedures and without waiting for the results of plaintiff's SMP appeal before calculating plaintiff's security level. (Doc. 1-1, at PageID 33). Plaintiff alleges that he complained about his annual review to defendant Crosby, but Crosby ignored plaintiff's complaints. (Doc. 1-1, at PageID 33-34). Plaintiff complains that he also notified the ODRC Director of plaintiff's situation on February 26 and March 8, 2019, but that the ODRC Director did not respond. (Doc. 1-1, at PageID 34). Plaintiff alleges that the defendants "held the plaintiff on false charges and have knowingly conspired to cover it up" in order to deter him from filing grievances. (Doc. 1-1, at PageID 35).

Plaintiff alleges that defendant Agee ignored plaintiff's complaints and failed to provide plaintiff necessary grievance forms. (Doc. 1-1, at PageID 35).

Plaintiff further alleges that on March 8, 2019, defendant Ewen told another inmate in segregation that plaintiff was being "rode out at a higher level 4B," but on the same date another corrections officer, who is not named as a defendant, told plaintiff that he was still classified "as waiting to go RIB, and . . . a level 3 security at this time." (Doc. 1-1, at PageID 35-36). Plaintiff asks: "How can I be waiting to go to RIB when I have already g[one] to SMP, and was never referred by RIB to SMP?" (Doc. 36, at PageID 36).

In his supplemental complaint, plaintiff alleges that on March 29, 2019, the unknown Legal services defendants reversed his 4B security level increase and remanded the disciplinary matter for rehearing before the RIB. (Doc. 4, at PageID 69). On April 11, 2019,

6

plaintiff was brought before the RIB. (Doc. 4, at PageID 69). Plaintiff alleges that defendant Gault told him that he was not going to beat the disciplinary ticket because it was an inmate's word against a Lieutenant's word. (Doc. 4, at PageID 69). Plaintiff alleges that during the hearing defendant Gerrison "asked a question and looked at Inmate Maxy [whom plaintiff had called as a witness] with contempt and [Inmate Maxy] began to stutter and change his story." (Doc. 4, at PageID 70). Plaintiff was again found guilty of the conduct violation. (Doc. 4, at PageID 71). He alleges that defendant unknown RIB Secretary stated at the end of the hearing: "I guess it was bad timing," which plaintiff claims is the same thing that defendant Tabler stated at the end of the earlier SMP hearing. (Doc. 4, at PageID 70).

Plaintiff alleges that at the time he filed his supplemental complaint he was still in segregation at WCI. (Doc. 1-1, at PageID 32). He further alleges that his cellmate, an alleged "mental health patient . . . flipped out on 4/11/19 around 2:00 pm and 2:10 pm." (Doc. 4, at PageID 70). He alleges that defendants Hoover and Crosby added inaccurate notes to his special security review. (Doc. 4, at PageID 71).

Plaintiff seeks monetary, declaratory, and injunctive relief. (Doc. 1-1, at PageID 21).

**C.    Analysis**

Liberally construed, plaintiff has stated a First Amendment retaliation claim against defendant Little. At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that this claim is deserving of further development and may proceed at this juncture. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). However, the remainder of plaintiff's complaint should be dismissed.

As an initial matter, plaintiff's complaint contains no allegations against defendant Librarian Berchell. As plaintiff cannot establish the liability of any defendant absent a clear

showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior, *see Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012), dismissal of defendant Berchell is warranted.

Next, plaintiff has failed to state a plausible due process claim against any of the defendants. To the extent that plaintiff alleges that defendant Little filed a false conduct report against plaintiff, the filing of a false conduct report does not implicate the Due Process Clause. *See Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. 1999); *see also Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) (finding "a prisoner has no constitutionally protected immunity from being wrongly accused").

Further, a prison disciplinary proceeding does not give rise to a constitutionally protected liberty interest protected by the Due Process Clause unless the imposed discipline results in a withdraw of good time credits or constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The prison discipline that plaintiff alleges he received—time in segregation and a temporary increase in his security classification—does not constitute "atypical and significant hardship" in relation to the ordinary course of prison life. *See, e.g., Workman v. Wilkinson*, 23 F. App'x 439, 440-41 (6th Cir. 2001) (the plaintiff inmate's "administrative control and maximum security classification do not constitute atypical and significant hardship because heightened security status is one of the ordinary incidents of prison life.") (citing *Sandin*, 515 U.S. at 484). For these reasons, plaintiff's due process challenges to his security review also fail to state a claim upon which relief may be granted. *See Martin v. Mohr*, No. 1:12-cv-281, 2012 WL 1574935, at *2-3 (S.D. Ohio May 3, 2012) (Litkovitz, M.J.) (Report & Recommendation), adopted, 2012 WL 3269237 (S.D. Ohio Aug. 10, 2012) (Weber, J.))

To the extent that plaintiff alleges that the allegedly false conduct report may affect his parole eligibility, plaintiff's claim fails because he does not have a constitutionally protected liberty interest in being released on parole. *See Hargrove v. Scott*, No. 1:05-cv-381, 2005 WL 1318858, at *3 (S.D. Ohio Jun. 2, 2005) ("Even if plaintiff were not a level 4B security inmate, the grant of parole is wholly discretionary with the Ohio Adult Parole Authority. Nothing in Ohio law 'requires the parole board to deny parole in the face of a misconduct report or to grant parole in its absence . . . even though misconduct is by regulation a relevant consideration.'") (quoting *Sandin*, 515 U.S. at 487).

Further, to the extent that plaintiff seeks to have his disciplinary conviction removed from his record, such a claim is not cognizable under § 1983. *Hargrove*, 2005 WL 1318858, at *3 ("A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction.") (citing *Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000)).

Nor has plaintiff stated a plausible due process claim to the extent that he alleges that defendants violated ODRC rules and procedures. Section 1983 addresses deprivations of rights "secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) ("A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law.").

Plaintiff has also failed to state a claim relating to the processing of his disciplinary appeal. There is no constitutional right to appeal from a disciplinary decision. *See Dentigance v. Eberlin*, No. 2:06-cv-00486, 2008 WL 618789, at *5 (S.D. Ohio Mar. 3, 2008) (citing *Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994)); *see also Boles v. Weist*, No. 87-1862, 1988

WL 58866, at*1 (6th Cir. June 10, 1988) ("Plaintiff does not have an inherent constitutional right to appeal his disciplinary conviction").

Moreover, plaintiff's claim against defendant Agee for allegedly interfering with the grievance process fails to state a claim upon which relief may be granted. "Prison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citations omitted).

Nor can plaintiff state a due process claim stemming from his placement in a cell with an alleged mental health patient. "[C]orrections officials retain broad discretion over the administration of prisons, including housing in general and cell assignments in particular." *Quick v. Mann*, 170 F. App'x 588, 590 (10th Cir. 2006) (citing *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979)). Courts have rejected the notion that a prisoner has a constitutional right to choose his cellmates. *See Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (*per curiam*); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993). This is the case even if a plaintiff's cellmates are "'annoying, offensive, strange, rude,' or otherwise undesirable living companions." *Dunbar v. Caruso*, No. 1:11-cv-10123, 2011 WL 3474004, at *5 (E.D. Mich. July 12, 2011) (quoting *Blue v. Knowlin*, No. 2:09-1629, 2009 WL 2843315, at *4 (D.S.C. Aug. 31, 2009)).[8]

Likewise, plaintiff has failed to state a claim to the extent that he alleges that defendants Ewin, Jackson, Kraft, Crosby, Hoover, Major Vance, Allen, Tabler, unknown classification employee, unknown Classification Chief, or the ODRC Director failed to take corrective action after they were notified of plaintiff's concerns regarding the conduct violation. Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Lutrell*, 199

---

[8] Plaintiff also has not alleged sufficient facts to state an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678.

F.3d 295, 300 (6th Cir. 1999). It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). *See also Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, plaintiff must show the officials "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Therefore, in the absence of any allegations that these defendants participated in issuing the alleged false conduct report on January 18, 2019, plaintiff's allegations that these defendants failed to take corrective action is simply insufficient to give rise to actionable § 1983 claim. *Cf. Chappell v. Morgan*, No. 2:15-cv-1110, 2016 WL 738098, at *4 (S.D. Ohio Feb. 25, 2016) (Kemp, M.J.) (Report & Recommendation) (citing *Shehee*, 199 F.3d at 300; *Stewart v. Taft*, 235 F. Supp.2d 763, 767 (N.D. Ohio 2002)), *adopted*, 2016 WL 1109093 (S.D. Mar. 21, 2016) (Watson, J.).

Nor can plaintiff save his failure-to-take-corrective-action claim against defendants Ewin, Jackson, Kraft, Crosby, Hoover, Major Vance, Allen, Tabler, unknown classification employee, unknown Classification Chief, and the ODRC Director by bootstrapping it to a retaliation claim. To state a viable claim of retaliation, a plaintiff must allege facts showing that "(1) he engaged in protected conduct; (2) the defendant[s] took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse

11

action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

In this case, plaintiff essentially claims that defendants Ewin, Jackson, Kraft, Crosby, Hoover, Major Vance, Allen, Tabler, unknown classification employee, unknown Classification Chief, and the ODRC Director failed to take corrective action based on comments that plaintiff made at orientation.[9] (Doc. 1-1, at PageID 37). However, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "[N]ot every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient")). Without "further factual enhancement" plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *Twombly*, 550 at 555–57. *See also Whiteside v. Collins,* No. Civ.A. 2:08-cv-875, 2009 WL 4281443, at *9 (S.D. Ohio Nov. 24, 2009) (finding the plaintiff's retaliation claim was subject to dismissal, noting that "conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim") (Report and Recommendation), *adopted*, 2010 WL

---

[9]For example, plaintiff alleges that at his WCI orientation he "spoke up about the Defendants [sic] oppressive treatment of their inmates." (Doc. 1-1, at PageID 37). Plaintiff alleges that he told "defendant Major" that certain uses of mace would constitute excessive force, that he told defendant DWO Lunecky that using "security level seg toothbrushes" was a "health and safety issue," and that he told defendant Jackson that the WCI law library was "unconstitutional and inadequate." (Doc. 1-1, at PageID 37). Plaintiff also alleges that "they took [his] inmate handbook when [he] showed up for the orientation." (Doc. 1-1, at PageID 37).

1032424 (S.D. Ohio Mar. 17, 2010). *Cf. Brow v. Carpenter*, 889 F.Supp. 1028, 1034 (W.D. Tenn. 1995) ("A plaintiff cannot bootstrap a frivolous complaint with a conclusory allegation of retaliation.").

Further, plaintiff's claim that defendants conspired to keep plaintiff in segregation in retaliation for plaintiff filing grievances or encouraging other prisoners to file grievances is subject to dismissal. (*See* Doc. 1-1, at PageID 35; *see also* Doc. 3, at PageID 71). "Liability attaches for a civil conspiracy when a plaintiff can prove that two or more defendants agreed to injure another by unlawful action and committed an over act in furtherance of the conspiracy." *Michigan Paytel Joint Venture v. City of* Detroit, 287 F.3d 527, 541 (6th Cir. 2002). Conspiracy claims must be pled with some degree of specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Vague and conclusory allegations, such as those alleged by plaintiff, unsupported by material facts will not be sufficient to state such a claim under § 1983. *Id*.

Accordingly, with the exception of plaintiff's First Amendment retaliation claim against defendant Little, plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

However, plaintiff has not submitted a service copy of the complaint or the necessary service of process forms for defendant Little. Therefore, **within thirty (30) days** of receipt of this Order and Report and Recommendation, plaintiff is **ORDERED** to submit a service copy of the complaint, as supplemented, summons, and United States Marshal Form for defendant Little so that service of process may be made in this case.

II. **PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff has also filed a motion for a preliminary injunction. (Doc. 2). Therein, plaintiff

13

reasserts the allegations in his complaint and seeks an order expunging the conduct report from his prison record. In determining whether to issue a preliminary injunction, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 347 (6th Cir. 1998); *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 n.3 (6th Cir. 1991). The four factors are not prerequisites, but must be balanced as part of a decision to grant or deny injunctive relief. *Leary,* 228 F.3d at 736; *Performance Unlimited v. Quester Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief" and proof that the circumstances clearly demand it. *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted); *Leary*, 228 F.3d at 739.

The Court finds that plaintiff has not alleged facts sufficient to warrant a preliminary injunction. Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his constitutional claims, or that he will suffer irreparable harm absent a preliminary injunction.

A preliminary injunction is also not warranted in this case because the purpose of a preliminary injunction—to preserve the status quo until a trial on the merits can be held, *see*

*Martin*, 924 F.2d at 102—would not be served. The present status quo in this case is, according to plaintiff, that his constitutional rights have been violated. The remedy plaintiff presently seeks in his motion for a preliminary injunction, expungement of a conduct violation, is more than an injunction maintaining the status quo; he seeks an Order from this Court requiring defendants to affirmatively correct constitutional deficiencies yet to be proven. Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief. *See id*.

Accordingly, it is **RECOMMENDED** that plaintiff's Motion for a Preliminary Injunction (Doc. 2) be **DENIED.**

## IT IS THEREFORE RECOMMENDED THAT:

1. The complaint, as supplemented, be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's First Amendment retaliation claim against defendant Little.

2. Plaintiff's Motion for a Preliminary Injunction (Doc. 2) be **DENIED.**

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motion to supplement his complaint (Doc. 4) is **GRANTED**.

2. **WITHIN thirty (30) days** of receipt of this Order and Report and Recommendation, plaintiff shall submit a service copy of the complaint, as supplemented (Docs. 1-1, 4, 4-1), a completed summons, and a completed United States Marshal Form for defendant Little so that defendant Little may be served with process in this case.

3. The Clerk of Court is **DIRECTED** to provide the plaintiff with a summons and United States Marshal Form for this purpose, as well as a copy of plaintiff's complaint, as supplemented (Docs. 1-1, 4, 4-1), so that he can make a service copy. Upon receipt of the service copy, completed summons, and United States Marshal Form, the Court shall order

service of process by the United States Marshal in this case.

4. Plaintiff shall serve upon defendant or, if appearance has been entered by counsel, upon defendant's attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

5. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL D. MCCAIN, SR.,<br>     Plaintiff, | Case No. 1:19-cv-234 |
| vs | Black, J.<br>Bowman, M.J. |
| WARDEN JACKSON, et al.,<br>     Defendants. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).