**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MICHAEL D. MCCAIN, SR., | Case No. 1:19-cv-234 |
| Plaintiff, | Black, J. |
| | Bowman, M.J. |
| v. | |
| WARDEN JACKSON, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Plaintiff is an experienced pro se prisoner-litigant currently incarcerated at the Ross Correctional Institution.[1] Plaintiff filed this §1983 action alleging various violations of his civil rights by multiple defendants during a period of time in which he was incarcerated at the Warren Correctional Institution. Most claims and defendants in his complaint, as amended, were subject to dismissal on initial screening under the Prison Litigation Reform Act. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). (Docs. 7, 12, 24). However, the Court concluded that a single First Amendment retaliation claim against a single correctional officer, Defendant Little, was "deserving of further development and may proceed at this juncture." (Doc. 7 at 7).

---

[1] In addition to the above-captioned case, Plaintiff has filed two habeas cases and five additional civil rights cases in this district alone. *See, e.g.,* Southern District of Ohio Case No. 1:09-cv-444-SJD-KLL (summary judgment granted May 25, 2012); Case No. 1:10-cv-71-MRB-TSB (transferred into N.D. Ohio as 1:10-cv-358 (summary judgment based on failure to exhaust)); Case No. 2: 10-cv-791-JLG-MRA (summary judgment granted Nov. 8, 2011); Case No. 2:15-cv-1262-MHW-MJN (pending retaliation claims, summary judgment partially denied on April 17, 2020); Case No. 2:20-cv-3164-ALM-CMV (retaliation claims dismissed on initial screening Aug. 24, 2020); Case No. 3:15-cv-252-WHR-MRM; Case No. 3:18-cv-67-WHR.

1

Following discovery, Defendant moved for summary judgment. Plaintiff filed a response in opposition, to which Defendant has filed a reply. I now recommend that Defendant's motion be GRANTED.

## I. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. As Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion. *Maston v.*

*Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010)).

## II.    Findings of Fact

Plaintiff alleges that on January 18, 2019, Defendant issued Plaintiff a false conduct report for violating ODRC Rules 16 and 18.7 (Doc. 6 at 9). According to Plaintiff, Defendant Little issued the conduct report in retaliation for plaintiff encouraging another inmate ("Inmate Maxie") to file a grievance and because plaintiff knew how to use the inmate grievance procedure.[2] (Doc. 6 at 9-11). Plaintiff asserts that he was placed in disciplinary segregation as a result. (Doc. 6 at 9).

On summary judgment, Defendant has filed an undisputed declaration that at the time of the incident, Plaintiff's housing unit had been placed on "modified movement" at the time due to recent reoccurring acts of violence. (Doc. 36-5). Based on the restricted movement, the unit was released to the dining facility one range at a time. While Defendant was engaged in moving the upper range to the dining facility, Defendant states that he heard Plaintiff loudly stating "they can't do this to us, it is against the law…[t]he only reason they are getting this off is because we are letting them!" (*Id.*)

Defendant's Declaration states that he perceived Plaintiff's statements as relating to Plaintiff being "upset with the modified movement and making boisterous comments in an attempt to influence other inmates into protesting the modified movement," at a time when officers "were on high-alert due to serious recent acts of violence within the unit."

---

[2]In other cases filed by Plaintiff alleging retaliation, two magistrate judges have alluded to Plaintiff's familiarity with the prison grievance procedure. (*See e.g.,* Case No. 2:20-cv-3164Doc. 7, R&R at 10, characterizing Plaintiff as a "serial griever"; Case No. 2:15-1262, Doc. 148, R&R at 1-2, noting that Plaintiff files "admittedly frequent complaints and grievances against prison officials.").

(Doc. 36-5 at 2, ¶4). Defendant signaled to Plaintiff to stay back from the other inmates, and placed him in restraints. The remaining inmates continued to be directed to the dining facility, where Defendant Little and Lt. Kiser "attempted to further defuse the situation…." (Doc. 36-1, Little Incident Report at 1). Plaintiff and another inmate were escorted to the transitional program unit. ("TPU"). Defendant reported in his incident report that after he removed Plaintiff, several inmates from another range did refuse to return to their cells after the meal, and instead sat at tables in the day room. *Id.* Plaintiff was subsequently charged with ODRC Rule Violation 16 (engaging in or encouraging a group demonstration or work stoppage) and Rule 18 (creating a disturbance).

Plaintiff pleaded not guilty. According to Plaintiff, it was Inmate Maxie who loudly expressed his concerns about the lock down and restricted movement.[3] Plaintiff maintains that he was merely advising Inmate Maxie that he should give his informal complaint to the unit secretary, Ms. McPherson. (*See* Doc. 36-1 at 3, "I was talking to inmate Maxie about a kite and an informal complaint then was by my[]self.").

> As I was moving to the front of the line, I spoke with inmate Maxie about the informal complaint kites. I stated in front of Lt. Little to inmate Maxie, I advised him he should have turned the kite in to Ms. McPher[]son so we could grieve the issues because I have a constitutional right to speak to any inmate and I told him if we do not grieve the issues than administration would do what they want to us. I was not in a group of …inmates.

(Doc. 36-1 at 11). Plaintiff and Inmate Maxie both testified. (*See generally*, Doc. 36-1 at 11-16; *id.* at 16, Maxie's testimony that "[McCain] did state we have to do something about this because we are letting them do this to us."). Plaintiff maintains that Maxie admitted

---

[3]In his response in opposition to summary judgment, Plaintiff states that during the conversation with Maxie, "I [also] complained about not being able to go to the law library" based upon the restricted movement," alluding to one of Plaintiff's prior grievances. (Doc. 43 at 4-5). However, Plaintiff argues that Inmate Maxie "was clearly the loudest" in complaining of restrictions imposed at the time of the incident. (*Id.* at 8).

4

that it was he, and not Plaintiff, who made the loud statement that was wrongly attributed to Plaintiff in the conduct report by Lt. Little. (Doc. 36-2 at 4). Notwithstanding the inmate testimony, Plaintiff was found guilty by the Serious Misconduct Panel ("SMP").[4]

The SMP determined that Plaintiff did loudly communicate his discontent with the modified movement, causing Defendant to believe that Plaintiff was attempting to influence other inmates into protesting the modified movement. (Doc. 36-2 at 1-2). The SMP recommended placement in Extended Restrictive Housing ("ERH"). However, upon further review by the ODRC Division of Legal Services, the ERH placement was reversed because Plaintiff did not have a Level 4 security classification or a history of group violence or serious disruption to orderly operations. (Doc. 36-2 at 11-13). Therefore, the placement decision was reversed, with remand to RIB for "RIB rehearing and appropriate sanctions." (Doc. 36-2 at 13).

The RIB reconvened a new proceeding at which they heard new testimony from Plaintiff and Inmate Maxie, but still found Plaintiff guilty of the charges. (Doc. 36-3 at 3-9). At the new disciplinary hearing, Plaintiff alleges that a correctional officer told him "that he was not going to beat the disciplinary ticket because it was an inmate's word against a Lieutenant's word." (Doc. 7 at 6-7, quoting Doc. 4, at 2). Plaintiff alleges that an officer "asked a question and looked at Inmate Max[ie] with contempt and [Maxie] began to stutter and change his story." (Doc. 7 at 6-7, quoting Doc. 4 at 3). Plaintiff was again found guilty, despite his contention that he was not encouraging group protest but instead was merely communicating to Inmate Maxie:

---

[4]Plaintiff vehemently protested what he perceived as multiple procedural irregularities, including the lack of an initial hearing before the RIB and the timeliness of the SMP proceeding. (*See* Doc. 36-2 at 3-4). Plaintiff's allegations of procedural irregularities were rejected as giving rise to any independent claim, and are not material to the claim remaining before this Court.

5

> "I think she wanted us to turn the informal complaint kites in to her" (speaking of Mrs. McPherson the Secretary). I further stated, "because if we don't write our issues up they will have the[i]r way and do what they want to us!" Inmate Max[ie] said "I know that[']s why I[']m putting it in the mail."

(Doc. 36-3 at 10). Plaintiff insists that Defendant must have heard the statement made by Plaintiff, but deliberately chose to attribute Maxie's statement to Plaintiff and/or deliberately misinterpreted the situation in order to retaliate against Plaintiff for encouraging Maxie to follow the grievance procedure. He alleges that an unknown RIB Secretary stated at the end of his hearing: "I guess it was bad timing," which is the same thing that a different officer stated at the end of the earlier SMP hearing. (Doc. 4 at 3).

### III. Defendant Little's Motion for Summary Judgment (Doc. 36)

The Sixth Circuit has "repeatedly held that to succeed on a First Amendment retaliation claim, a plaintiff must show that:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*)). Defendant Little now argues that Plaintiff cannot produce sufficient evidence to prove the essential elements of his claim. I agree.

### A. Lack of Protected Conduct

Defendant first persuasively argues that Plaintiff cannot show that he was engaged in any protected conduct, because assisting another prisoner in filing a prison grievance is not protected conduct as a matter of law. An inmate has a First Amendment right to file a non-frivolous grievance on his own behalf without fear of retaliation. *See Smith v. Campbell*, 240 F.3d 1032, 1037 (6th Cir. 2001); *Bell v. Johnson*, 308 F.3d 594, 607 (6th

6

Cir. 2002). However, an inmate generally does not possess a First Amendment right to provide legal assistance to other prisoners. *See Shaw v. Murphy*, 532 U.S. 223, 230-232, 121 S. Ct. 1475 (2001) (declining to extend constitutional protection to inmate-to-inmate legal communications). Recently, in *Berkshire v. Beauvais*, 928 F.3d 520 (6th Cir. 2019), the Sixth Circuit confirmed:

> To be sure, "an inmate does not have an independent right to help other prisoners with their legal claims. Rather a 'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts."

*Id.* at 533 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (additional citation omitted); *see also, generally Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 2003); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). The only situation in which courts have recognized a constitutional right to counsel other inmates is when the prisoner-to-prisoner legal assistance is in accordance with an inmate's assigned job duties, and/or the assistance is "necessary for other inmates to access the courts." *King v. Zamiara* ("King I"), 150 Fed. Appx. 484, 492 (6th Cir. 2005); *Berkshire, supra* (holding plaintiff had submitted sufficient proof to show protected conduct when he filed complaints for other inmates as their housing unit representative); *accord Wisniewski v. Fisher*, 857 F.3d 152, 156-57 (3d Cir. 2017).

Even accepting Plaintiff's version of events, that Maxie and not Plaintiff was the inmate speaking in a loud tone complaining about the restricted movement, and that Plaintiff merely advised Maxie that he should have turned in his complaint form to the Unit Secretary, Plaintiff still was not engaged in protected conduct. He was not attempting to file a grievance on his own behalf but was instead offering unsolicited advice to Maxie at a time when the unit was on restricted movement and tensions were high due to recent

7

violence. It is undisputed that Maxie already was aware of the prison's grievance procedures. (Doc. 36-5 at 2, ¶5). In fact, Maxie already had the requisite form, and responded to Plaintiff's advice with agreement: "I know that[']s why I[']m putting it in the mail." (Doc. 36-3 at 10; *accord* Doc. 43 at 20 (Plaintiff's argument that he was not assisting Maxie in filing a grievance "because he had already written it and was taking it to the kitebox as we walked to chow.")). Thus, Plaintiff's advice was in no way "necessary" for Maxie to access the prison grievance system. Because Plaintiff's conversation with Maxie was not "protected conduct," Defendant's imposition of discipline – *even if* in response to that conversation - did not violate Plaintiff's First Amendment right.

## 2. Causal Connection

Defendant appears to concede that Plaintiff can demonstrate the second element of a First Amendment claim, "adverse action," insofar as he was indeed issued a conduct report based on the incident.[5] With respect to the third element of "causal connection," however, Defendant argues that Plaintiff cannot show that the conduct report was issued *because of* Plaintiff's "protected" speech, and asserts that the evidence demonstrates that the report was instead issued because Plaintiff was being disruptive. In support, Defendant relies upon his Declaration (Doc. 36-5) and related evidence including the language of the conduct report.

> Under the third element, "the subjective motivation of the defendants is at issue." *Id.* at 399. "The analysis of motive in retaliation claims is well-developed" - "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id.* (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). "If the defendant can show that he would have taken the same action in the

---

[5]Ordinarily, whether a conduct report constitutes an adverse action will depend upon "both the punishment [Plaintiff] could have faced and the punishment he ultimately did face." *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018).

> absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* A defendant must make this showing by a preponderance of the evidence. *King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012).

*Maben*, 887 F.3d at 262 (additional internal citations omitted). In *Maben*, the court noted that although the question of causation is "usually…a factual issue to be resolved by a jury," "a court may grant summary judgment even in a causation inquiry, where it is warranted." *Id.*, at 267 (internal quotation marks and additional citations omitted).[6]

Certainly, there is a significant body of evidence in Defendant's favor on this issue. Plaintiff himself admits that his conversation with Maxie was about Maxie's concern with the restricted movement conditions and Maxie's intent to file a grievance over that issue. Plaintiff argues that the evidentiary record shows "a genuine issue of material fact" on whether it was Plaintiff or Maxie who made the loud statement that caused Defendant to write up the conduct report for encouraging a group demonstration and for creating a disturbance. However, Plaintiff's focus on which inmate said what is misplaced. Regardless of whether Defendant's perception was in error, the record strongly supports that Defendant reasonably perceived that Plaintiff's remarks concerned the restricted movement and were causing a disruption in an already tense and volatile environment.

---

[6]In a recent case in which Plaintiff filed yet another First Amendment retaliation claim, Magistrate Judge Vascura recommended dismissal on initial screening due to a lack of "causation." Judge Vascura reasoned that the retaliation inference was unreasonable despite the allegation of temporal proximity because Plaintiff routinely files so many grievances that "any actions by prison officers will fall in close temporal proximity with one or more of his complaints simply by chance." Case No. 2:20-cv-3164 (Doc. 7, R&R at 11). In opposing summary judgment, Plaintiff argues for the first time in this case that the conduct charge on January 18 was in retaliation for a grievance filed five days previously on January 13 and/or for Plaintiff's "reputation." (Doc. 43 at 13-14). The undersigned construes Plaintiff's argument as an improper attempt to amend his complaint by shoring up his retaliation claim with new allegations. Aside from the procedural impropriety of adding a new retaliation claim at this late date, the undersigned agrees with Judge Vascura that Plaintiff's reliance on temporal proximity alone would be insufficient to show causation under the circumstances.

Plaintiff has attempted to demonstrate a genuine issue of material fact by filing his own affidavit as well as that of Inmate Maxie.[7] However, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X v. Blatter*, 175 F.3d at 399. Thus, the question is whether Defendant has met his burden of production to show that he was not "motivated in substantial part" by retaliatory animus, such that no reasonable trier of fact could find for the Plaintiff on the element of causation.[8] See *Dye v. Office of the Racing Com'n*, 702 F.3d 286, 294-295 (6th Cir. 2012). The undersigned concludes that Defendant has met his burden on this issue. However, even if a reviewing court were to disagree, Defendant still would be entitled to judgment as a matter of law based upon Plaintiff's inability to show that the speech in which he was engaged constituted protected conduct.

### 3. Qualified Immunity

In addition to persuasively arguing that Plaintiff cannot prove the elements of his First Amendment claim, Defendant alternatively argues that he is entitled to qualified immunity. The purpose of qualified immunity is to provide governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for

---

[7] Plaintiff continually focuses on the legitimacy of his conviction on the disciplinary charges, arguing that the evidence does not support his conviction. Apart from the conduct charge's alleged causal connection to the First Amendment retaliation claim, Plaintiff's other attacks on his disciplinary conviction were rejected on initial screening as failing to state any cognizable claim. (*See* Doc. 7 at 8-9, explaining that Plaintiff had failed to state a due process claim based upon the filing of a false conduct report or disciplinary proceeding; *id.* at 9, stating that an inmate found guilty in a disciplinary hearing cannot use §1983 to collaterally attack the hearing's validity or the conduct underlying the conviction).

[8] In *Thaddeus-X,* the court set forth the plaintiff's burden to show that the adverse action was "motivated in substantial part" by the plaintiff's constitutionally protected conduct. *Id.* at 386. "Substantial" is not defined. However, *Thaddeus-X* also states that "if the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* at 399. Arguably, a defendant could prevail if he produces evidence that no genuine issue of material fact exists that his motive to retaliate was "insubstantial," even if not entirely absent.

10

damages." *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012 (1984). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Once a defendant has raised the defense of qualified immunity, the plaintiff bears the burden of proof to show that the defendant is not entitled to that defense. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005). Because no reasonable official would have perceived that Plaintiff was engaged in protected speech (and he was not in fact so engaged), Defendant is entitled to qualified immunity on the retaliation claim asserted in this case.

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT:** Defendant Little's motion for summary judgment (Doc. 36) should be **GRANTED**, and this case should be dismissed.

                                               */s Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHAEL D. MCCAIN, SR.,               Case No. 1:19-cv-234

    Plaintiff,                                       Black, J.
                                               Bowman, M.J.

    v.

WARDEN JACKSON, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).